We'll hear argument next in Case 18-11-50, Georgia v. PublicResource.Org, Inc. Mr. Johnson. Mr. Chief Justice, and may it please the Court, the Eleventh Circuit held that annotations to Georgia's official code are categorically ineligible for copyright protection. That holding conflicts with a straightforward application of the Copyright Act's text in this Court's precedents, starting with the statute. Sections 101 and 103 of the Act expressly provide that annotations are copyrightable derivative works. Nothing in the Act supports stripping Georgia's annotations of copyright protection merely because they were prepared by a contractor on behalf of a state agency. Therefore, the crux of the party's dispute is whether this Court's 19th century precedents support a decision different from the one that would be reached by applying standard interpretive principles to the Copyright Act's plain text. They do not. In fact, those decisions strongly favor Georgia. Together, they hold that while judicial opinions are not copyrightable, annotations added to opinions by a court's official reporter are copyrightable works of authorship. Similarly, while statutory text is not copyrightable, annotated research references are eligible for copyright protection, even if they appear in an official code book like the OCGA. As a diverse coalition of states has explained, affirming the decision below would scuttle numerous states' regimes for publishing annotated official codes. Absent direction from Congress, this Court should not extend a judge-made doctrine to override the systems established by numerous states' democratically elected governments. I invite questions, but as a diverse – so PRO's case rests heavily on an expansive interpretation of just a few sentences of this Court's 1888 Banks decision. But the Banks case really just explained its rationale in a single sentence, and that sentence says that the whole work done by the judges constitutes the authentic exposition and interpretation of the law, which is binding on every citizen and is thus free for publication to all. So we read that sentence as establishing the principle that a work is not copyrightable if it is of a type that can serve as a vehicle for establishing binding law. What do you understand the significance to be of the fact that these annotations, the references, are official? Does that give them more weight when they're cited to the Court? No. And I think that the thing that's official is the code. So it's the official code of Georgia. Whether the – whatever the additional material is included in – It does appear in the same publication. That's correct. And I don't think that that makes a difference for purposes of copyright under this Court's precedent. And I think that that's clear from Wheaton and Callahan. So in both of those cases, the Court said that a court-appointed official reporter could hold copyright in annotations that appeared in the reporter volumes. So this case is really just the legislative analog of Callahan. In Callahan, the Court held that the official reporter could hold copyright in things like headnotes at the top of a decision. And if you look at the judicial decision summaries in the OCGA, they are materially indistinguishable from those headnotes of cases. But why isn't – why isn't the legislature, like the judge, the judge puts his imprimata on the annotations not copyrightable, the syllabus, and here it's the State legislature. Why do you treat the judge and the State legislature differently? Well, I think it's different because the General Assembly is not enacting individual annotations through bicameralism and presentment. So the annotations are first prepared by a commercial publisher, so by a contractor. And they do that subject to the supervision of the Code Revision Commission. But they do it as, what do they call it, office for hire. So the one that would hold the copyright would be the State. The State does hold the copyright. That is correct, very much like how an official reporter held the copyright in Wheaton in Callahan. So here, the Code Revision Commission, acting on behalf of the State, obtains a copyright for the State. But I think the crucial point under Banks is that the annotations are not individually reviewed by legislators. They do not go through the process of bicameralism and presentment. But, counsel, aren't they approved? I thought they were at least approved as a whole by the legislature. So I think the Eleventh Circuit's decision is perhaps a little confusing on this issue, but I don't think that there's any disagreement about the underlying facts. The answer is, as the Eleventh Circuit said in its opinion, the annotations are not individually enacted. I understand that. I posited that in my question to you. Right. Aren't they approved as a whole by the legislature? What the legislature does every year is passes a Reviser Act, and the Reviser Act reenacts the code, including OCGA 111, which calls for the statutory text to be merged with the annotations. Okay. All right. So if that's the case, and you include the word official on it, presumably you're doing that to create some value for the reporter. Why would we allow the official law enacted by a legislature, equivalent of being approved by the judge in annotations, as Justice Ginsburg indicated, why would we allow the official law to be hidden behind a paywall? So I don't think that adopting our position would cause the official law to be hidden behind a paywall. First, the law is available on Lexis's website, and also PRO is free to cut the official annotations that the legislature has in some fashion or another, given its official approval to. The annotations are not the law, so the law is not behind a paywall. Also, the annotations are available. Well, you're not arguing that it's purely – I thought you disavowed the argument that it's only things that bind for which copyright's unavailable. So our position is that if a work is of a type that as a class can serve as a vehicle for establishing binding law, like judicial opinion, then — And aren't annotations in that category, aren't they frequently used by State courts as indications of the legislature's intentions? No, not the type of annotations that we're talking about here. We're talking about traditional annotations that are research references or finding aids. They're things like, to give an example, from JA 699, one of the annotations that we're claiming copyright in says, for a survey article on trial practice and procedure, see a particular law writer. So you're disavowing that they're ever used by State courts as indications of legislative intent? That never happens? That's a representation you're making to this Court? The annotations would never be used as an indication of legislative intent like you would cite a legislative history material. Why does Georgia – Does that apply to all of the annotations in the Official Code? Does it apply to annotations made by the Georgia Bar? So it applies to all the annotations we're claiming copyright in. The Georgia Bar, I think of those as comments, not necessarily annotations. They're provided by the Georgia Bar Committee to the Code Revision Commission. The Bar Committees ask that they be included in the Code, and often the people who write them are involved in actually drafting the statutes. Georgia courts do cite those comments, but we are not claiming copyright in those annotations. PRO is free to copy them, and in fact, they appear in Wess unannotated or unofficial annotations. What is the theory that distinguishes those annotations from the other annotations? Well, I think that, first of all, the author is different. So it's the State Bar. The State Bar, if it wanted to make a copyright claim, would have to be the one that's making the copyright claim. I don't think that – I think probably those would not be copyrightable if the State Bar was trying to make a copyright claim. Why? I think – now, I think there could be maybe a debate or dispute about this, but I think that they probably would not be copyrightable because they are offered for the purpose of providing a gloss on the text, the drafter's intent for the statutory text in some cases, and courts in Georgia have treated them as such. Why would the Georgia Bar have particular insight into the intent of the legislature in enacting a provision of law? Well, often my understanding from reading the introductory text to these comments is that they are often drafted by people who were involved in drafting the legislation. So even though a bar committee member isn't in the legislature, they are often involved in assisting with the drafting of the legislation. Now, perhaps – But a lot of people could be involved in the drafting of legislation. It could have been proposed by some interest group. It could have been something that was worked on by a law professor. So what distinguishes – those would be copyrightable, wouldn't they be if somebody like that wrote an article? So what distinguishes them from the comments of the Georgia Bar? So I think it's perhaps different because the Georgia Bar has specifically asked for these comments to be included in the OCGA, and Georgia courts have treated them as having some authoritative weight. So I think that that's what makes it different. But I want to stress that the comments are not at issue in this case. I'm just trying to give my best views about whether those are copyrightable or not. I didn't actually, in reading this brief, understand that. I'm not sure the court below did, because they relied on the comments as one of the reasons for why this was attributable to the state, for the very reasons you're giving, that the state asked for them, that the state commission who prepares them is involved generally in the drafting of the law. And so I don't think they separated out that the only thing you were seeking copyright protection for is the research comments and the – tell me exactly which part of the annotations you're seeking. It's the materials listed at JA 496 to 497, and I can march through those. No, no, that's all right. But I do have a question. If I read Wheaton, Wheaton says anything prepared by the judge can't be copyrighted. That includes head notes, which are comparable, I think, to summaries that might be included in these annotations, because it's prepared by the judge. It remands to see if Wheaton was not an independent contractor and was an independent contractor and actually sought the copyright. Banks says if you are a separate entity, you can do this, but this is a work for hire. And I go back to what Justice Gorsuch was asking you. The state is the one who is requiring this to be done. It reviews it. It approves it. It is setting it out there as a merged document with the actual laws. It may have – merger doesn't mean it's actual law, but neither are head notes actual law. Dicta is not actual law. And no one's arguing – you're not arguing under Banks or any of the other cases that the state couldn't put a copyright in head notes it prepares or in the dicta in its judicial opinions. So why isn't authorship really the most important factor? If it's going to explain the law either by reference to comments or by reference to cases that reflect its intent, isn't that an explanation, an official explanation of the law? So I think we win if authorship is the standard. And I think that that's basically the United States' test and the United States agrees that we win under that standard. And on the question of what are the – No, it doesn't because it sort of limits it. It thinks that it's not official in some sort of unofficial way, even though it's approved by the legislature. It's merged by its very terms. It's a contract for hire, which means you treat it like an employee. If a law clerk prepares my head notes or my summaries, I don't think I can get a – he or she can get a copyright in it. I don't think I can get a copyright in it, even as a work-for-hire. Well, I think that the answer can't be that the fact that this is an official document makes a difference for copyright purposes under Wheaton and Callahan. Again, those were official reporters. And if the officialness of the document renders it uncopyrightable, then almost – I mean, all State government documents in some way are official. They come from the State government. But the one thing that we know is that Congress made the policy determination to allow State governments to have copyright. And it's important to emphasize that Congress did this with a 1959 study and 1961 report in front of it, saying that annotations by State government employees are copyrightable under current law. Why does Georgia have an official annotated code? Like, why not just an official code? I think it's for the benefit of readers so that those finding aids are present. And I think the reason why they made it official is because they wanted to have an annotated version subject to a price cap so that it would be available to people at a relatively low price. It's probably governmental. I mean, I thought this isn't that difficult. If a judge does something in his judicial capacity, it is not copyrightable. If a legislator does something – or a group of legislators – in their legislative capacity, it is not copyrightable. Who cares who the author is? There are public policy reasons that have existed forever in the law that you make those two things not copyrightable. The executive is harder to separate out, but you could do it. Now, that, I think, is basically the SG's position. If it's not in their official capacity, if it's simply a summary or it's a comment upon something done in an official capacity, it is copyrightable, even though it be done by a sworn public servant. All right? There we are. I think that's roughly the SG's position. When I read that, it seemed pretty sensible to me and consistent with the precedents that you have a somewhat different position. So I guess my question is, is their position, at least if I understand it, acceptable  The SG's position is acceptable to us, and we win under that standard. Perhaps it would be helpful for me to explain quickly why we do win under that standard so the Lexis and the Code Revision Commission are not acting in a lawmaking capacity when making these annotations. Thank you, counsel. Mr. Yang. Mr. Chief Justice, and may it please the Court. This Court in Banks determined that there was a consensus that no copyright exists in a work by, quote, judicial officers in the discharge of their judicial duties, unquote. Banks then held that a judge who in his judicial capacity prepares an opinion or decisions in other materials is not regarded as the author within the meaning of the copyright statute. Those principles from the judicial context also apply in the lawmaking context. So if a lawmaker acts in his capacity as a lawmaker and creates a work in the discharge of his lawmaking duties that is within the process for creating law, no copyright exists. Now, in this case, this case is going to be controlled, however, by Callahan. Callahan upheld a copyright in annotations to judicial decisions by an official court reporter, a salaried public officer of the court who was appointed and removable by the court. Such annotations are written after the fact as an attempt to accurately describe or provide context for the underlying source. Mr. Yang, I'm sorry, finish your sentence. Well, I was just going to say that the annotations here are research aids. They are created after the fact. They provide a comprehensive, not a selective selection of materials related to the statutes. There is no approval for the substance. And in fact, the context is easier than Callahan because it's made by a lawmaker. Don't finish it that far. Okay. All right. I'm happy to stop. I'm glad I asked you to finish it, because if you stress that the commission doesn't do anything with respect to these annotations. Suppose the commission did do something with respect to these annotations. They didn't write them themselves, but they supervised the process carefully. They were they imposed some kind of editorial standards. What then? I don't know that that would make a difference to the bottom line. Our understanding of the test that draws from Banks is that when a lawmaker acts in his capacity as a lawmaker and the discharge of lawmaking duties. Are you saying that the commission just doesn't count as a lawmaker? Is that true? And they're not discharging lawmaking duties. Yes. Because the commission is composed of 15 individuals, five of which are not even in the legislative process. In Harrison, the Supreme Court of Georgia recognized that those non-legislative people could actually make the difference in any kind of decision. So it's. So, but the legislature sets up this commission and puts a bunch of its members on this commission. Yep. And let's say in my hypothetical world, this commission actually takes its job seriously and imposes some editorial standards for what will and will not go into the annotation. Still. Same result, but it's also in the context of the rest of this case. Section 111. The statutory portion of the what's produced by Lexis in the commission is enacted as statute. But Section 117 explains that the notes, the annotations, and the other things are for convenient reference and do not constitute the law. Every year they enact this. And there's a good example. Well, the people look at the annotations pretty carefully as guides to what that law is all about. Well, if they look to be. And if the commission is basically involved in what should be in and what shouldn't be in to explain to people what the law means, why would that be copyrightable? I don't think they're actually explaining what the law means. They're describing what other. This is better than Callahan. Because in Callahan, the reporter was equally superintended by the court, right? Could have been removed by the court, was hired by the court, appointed by the court. Here, they're describing what third parties do, what courts do. To the extent there's any relationship, it's only with the legislature. And even there, it's attenuated. Kagan. So you think even if the commission actually wrote the annotations, it would still That's right. Because look what the annotations are. Under this contract, they are intended to be comprehensive. They don't say this is a good opinion, this is right, this is wrong. They just want to cover the waterfront, right or wrong, accurately describe the judicial sources that are out there, the attorney general's opinions, law reviews, other types of secondary ALRs, these types of things. Would it make a difference if instead of the commission, it were done by the legislature itself? You know, I think that would be a little more complicated. But all they do is describe what judges do. After the fact. Oh, no, no. I think that would be the same. Okay. Let's say it was adopted by the legislature, too. And let's say we put the word official on it, for whatever good that does, market power-wise. Then what? Well, if it's done as it is done here, which I think if you look, for instance, in the Respondent's Brief at pages 2A and 3A, the, it says the official code is prepared by the commission, legislative council, and Lexis. And then the next page over, it says the statutory portion is a true and correct copy, certified. What's official, what's certified is correct, is the text of the statute. All right. Nice evasion. But if we could just answer the question, I'd be grateful. Let's say the legislature itself does the reviewing of all of the judicial opinions and then it collects the ones and then it enacts it and calls it official or not official. You choose. I don't care. Is that copyrightable? Yes, if they are doing it in the same way, which is the procedure. Because it's not the legislative capacity, right? I mean, that's what it comes down to. It's not its legislative capacity. It's in some other abstract capacity in which a legislature can act. That is our understanding as drawn from this. Then the answer is no. Then the answer is no to his question. Because the whole point, I thought, is that you go very abstractly. Minnell explains it. I do, says the bride. You can't copyright that. It's being used as a performative. It's not an expression. Now, take that idea and bring it down to the legislature and making laws. Where you have some words on pieces of paper and they are performing a function that is a legislative function or a judicial function, no. It's not solely an expression. It's performing a function, and we don't allow it because to let a monopolist get a hold of that is dangerous. And that's what I thought that the argument was as I got the argument. So I'm not sure there's any disagreement. What I intended to say was that the annotations would be copyrightable. The statute would not. If it is a description of what other parties are doing, there's no particular this. Sotomayor, I'm sorry. I don't understand. Now I'm turned between two colleagues. Well, maybe just to clarify. Let me just get to something very simple, okay? Let's assume there are some States that have pro se guidelines. To pro se litigants, this is how you follow the law. Could they copyright those and charge for them and preclude others from copying them and disseminating them? If, for instance, this is like a your – let me draw an example. When you do – when the Court adopts rules for Federal Rules of Civil Procedure or otherwise, there are often advisory committee notes that explain kind of context. Right. Is that copyrightable? We understand that, no. We understand that to be in the context of the rulemaking proceeding. All right. So why is that different? And I think your brief made it very clear. Committee reports, even on failed legislation, wouldn't be copyrightable. Materials prepared for that process are not copyrightable unless the individual or the State didn't require them or create them. So why is it that an official guide to an official code where the annotations merge with that code that are prepared by the State, why aren't those copyrightable? Why aren't they like? There's a few things that are, I think, incorrect in the premise. One, if you look at Callahan, you had annotations by the official court reporter superintended by the court combined in a single volume, still copyrightable. So the fact that they're together, not relevant. Second, when we're talking about annotations here, we're talking about a description of case one. Case one says the statute means X. Case two means the statute means Y. They reproduced both of them. They're not saying that one was right or wrong. Suppose the commission, when it supervised part of its supervision, it looked over the annotations and it picked out a few that it thought were egregiously wrong in terms of interpreting the law. Would that make a difference? You know, I think it would start to be a little harder. It starts to sound a lot more like post-enactment legislative history if it were done by the legislature. A little bit harder, but that's still copyrightable? If the commission is saying, no, that's an incorrect interpretation of law? We'll take out that annotation? I think because the commission is, again, making an observation with respect to what these other parties do. They don't have any particular expertise. It's not the legislature itself doing this. Okay. Now I'm going to go back to Justice Gorsuch. How about the legislature? Well, if the legislature did that, I think there would be a question whether that is part of the legislative process. Isn't that banks? I mean, isn't that potentially, Justice Gorsuch's hypothetical, the distinction between banks and Callahan or not? Well, I think banks In other words, can't you give up that hypothetical and still win? I think we could give it up. But let me take a step back and say we can start looking to the fringes of this case. But when we look at the core of what this is about and the way that this has arisen, the test that we think flows from banks and Callahan is one that takes care of the real-world consequences here. Thank you, counsel. Mr. Chitron. Mr. Chief Justice, and may it please the Court. I think it's useful to remember that the question Georgia presented in this case was whether the government edicts doctrine extends to documents that lack the force of law. The answer to that question is clearly yes. The United States agrees with us that it has to be yes. That's required by the Court's decision in banks. And it seems necessary unless legislative history, agency guidance documents, unpublished judicial decisions are going to be subject to copyright. Georgia hasn't proposed an alternative test, but we've proposed a test that we've drawn from the language in this Court's decisions, particularly Wheaton, as it was understood by Justice Story and Callahan, which adopted that understanding. And it asks two straightforward questions. Is this a legal work, and is it published under the authority of the State? If it is, then it can't be copyrighted. And that makes sense, because States don't publish authentic State legal works for the purposes of making money or maximizing profit. They publish them so that people will understand their legal obligations. And so you do not need the copyright incentive to ensure that these works get made. Why is it different if the State or is it? The State hires an official historian. The historian's job is to write the history of the State of Georgia. After a committee reads it and says yes, and they stamp it official, they have a copyright contract, so they get the State gets the copyright. Is it copyrightable? I think that is copyrightable because they Because why is that copyrightable? And yet a comment made by the professor's cousin, who happens to teach in law school, is not copyrightable. The comment being on the State of the law, the comment being a summary of the cases, the comment being the six things listed on page whatever it was, page 497, the seven things. How is that different? I guess I want to answer both parts of the question, but I'm going to take the second part first. I don't think a law professor is speaking in the voice of the State or that something a law professor publishes is published under the authority of the State. So that would be copyrightable under our test, and nor do I think that an official State history is a legal work, and so that wouldn't be captured by our test either. And there is a difference, because when the State speaks, when you speak in the State's voice with respect to a legal work, you're asserting a kind of authority. That has value that it doesn't have when the State publishes its poetry. Kagan. I understand, Mr. Citroen, that the SG is essentially saying, well, for these annotations, the State is not telling you what it thinks about the law. The State is doing no more and no less than what Westlaw does. So the State's view of the law is just like Westlaw's view of the law. Why should we treat the two differently? Well, I don't think they're the same for two reasons. One is these annotations are produced in the name of and the voice of the Code Revision Commission, and the Code Revision Commission is not a nonentity. Code Revision Commissions are responsible for assembling the text of the statutes and the other things that go into the official code. And, look, in the United States context, 27 of the titles of the United States Code are simply the product of a Code Revision Commission. They aren't enacted as texts. So these Code Revision Commissions, they do exercise a legislative function. They assemble the text of the statute. How is that different from the court reporter? Because the court reporter doesn't — isn't responsible for the text of the opinions at all, right? They're not allowed to move around the text and say, well, this would be clearer if — They're responsible for the text of what they produce as the summary. What they add, they are responsible for. But the court is not responsible for it, and that's the big difference. Being the official reporter doesn't prevent you from adding whatever you want to the report. If Henry Wheaton had added things the court didn't like to the 1815 term report, they're not required to pay him for the 1816 term, but they can't pull the 1815 term report off the shelves. It's up to him what goes in that book. That's the complete opposite of what happens with Lexis and the OCGA. Lexis can't add one thing to the OCGA outside the State's authority. The hypothetical facts you pose, those are the actual facts of this case. The undisputed material facts are that all the materials in the OCGA are finalized under the direct supervision of the code revision commission. What's the difference between the commission and the reporter? I'm sorry. The difference between the commission and the reporter — The court reporter. The commission — In other words, how do you deal with Callahan and Wheaton, I guess, and how if we're going to bring in the Sixth Circuit decision in now? I think the difference is that the classic judicial reporter, particularly in the 19th century, which is what we should try to keep in mind, spoke in their own voice when they added materials to the court's opinion. The code revision commission does not speak in its own voice. It's not like Westlaw, something you read on the Internet. It's speaking in the State's voice when it puts the annotations in. The annotations may not be very valuable. They might not be worth a lot in court, just like legislative history in front of many judges is not worth a lot in court. But it's still an authentic State legal document. It still comes through in the voice of the State. And that's the difference. Alito Is this a matter of anything other than the label that's put on this volume? Suppose they put, they made it clear in labeling the volume that the law itself is the official, the code itself is the official law of the State of Georgia. All of the rest is not official. Would that take care of the problem? I don't think it would take care of the problem in the following sense. If the State is the one that actually puts together the annotations, and it's known that these are the State's annotations, labeling part of it official and part of it But that does go a long way. I think our main objection is when you confer officiality on these documents and you speak in the State's voice, that's the thing you can't copyright. If they wanted to have the official code of Georgia with annotations by Lexis, they could certainly have that. Sotomayor Mr. Citrin, in both Wheaton and in Callaghan, both opinion mentioned that the cover pages said that these reports were by the individuals, not by the State. And so the State wasn't claiming ownership or title to these annotations, correct? Citrin That's right. Sotomayor That's different from here where neither Lexis nor am I wrong? I don't think the annotation tells us who prepared the annotations or does it. I didn't look specifically. Citrin I mean, the reason the Eleventh Circuit got confused about whether these were distinguishable from the other kinds of annotations in which they claim copyright is there isn't anything on the face of the annotations to tell you who wrote them or who's responsible for them. Sotomayor All right. Could you please take the government's test? You articulate it, and you tell me why their conclusion is wrong under their test. I know you don't accept their test, so don't fight the hypothetical. Okay? Except the hypothetical. And tell me why they're wrong under their test. Citrin I think the simplest understanding is the following. The Code Revision Commission is in two critical respects like the legislature or exercising a legislative or lawmaking function. First, it discharges its duties entirely at the behest of and for the benefit of the legislature. And the Georgia Supreme Court has told us that this is an exercise of the legislative authority for purposes of Georgia constitutional law. So trying to draw some line between the Code Revision Commission and the legislature would be, I think, inauthentic. On top of that, Code Revision Commissions are exercising a legislative function. They assemble the text of the statutes. If you were to adopt a rule that the Code Revision Commission does not speak for the State, in States like New York, where the statutory text is put together by a Code Revision Commission, you could copyright the statutory text itself, because those statutory texts are just evidence of the law. They're not binding or the force of law vis-à-vis the statutes at large or the like. And but for Section 105, Title 42 of the U.S. Code could be copyrighted, too. Ginsburg, may I ask you a basic question of what matters here? One thing is that the annotations have the official State imprimatur. And you say that that's what matters. But why instead shouldn't it matter that these annotations are in no sense the law, they're just useful information on how the law has been interpreted and applied by others? I think it's what you mean by in no sense the law, which is, I think, a complicated concept. When it bears the State's imprimatur, it is the law in some sense. It may not be worth very much. The State can say, look, this is just informational. Just the way the IRS, when it puts out an FAQ about how to file your tax return, says, look, this is just informational. A court might take a different view of it. But when the State is telling you, this is a good summary of the case, you're going to treat that differently. And it's not for nothing. Ginsburg. Well, they're not saying it's a good summary or a bad summary. They may take comments from both sides, one interpreting it one way, one interpreting another way. They're useful aids to research. But you say that that doesn't matter, that these are information, just information about how the law has been interpreted and applied without making any judgment whether those are correct or incorrect. Okay. The best I can say about it is this. You know, my colleague said, you know, I think the comments, which are often used by courts as an authentic source of law, probably shouldn't be copyrighted because they are offered as an intended gloss on the code. In their complaint, this is what they say the judicial annotations are there for. Quote, they must be carefully crafted by Lexis in order to illustrate and interpret the code sections of the OCGA. That's what they're there for. The State puts them there to illustrate and help interpret the code for its users. They aren't the law. You can't cite them in the sense of saying, I know the statute says this, but look at this annotation here. Just the way the notes that are at the end of the Federal Rules of Civil Procedure aren't going to overrule the text of the rule. But they do count for something because they come in the State's voice. Breyer. I think the question, I mean, I agree that you've clarified everybody to me. I mean, the question is what function does this particular set of words play in the law? And if we look at the precedent, I'm back where Justice Ginsburg was, because it's hard for me to see that it plays much more of a precedent than Wheaton, I mean much more of a role than Wheaton's annotations. And I can think of cases where a lot of people would say in respect to Westlaw, in respect to Lexis, and probably here, ah, yes, that's what they say. But go read the case, my friend, and it isn't as good a summary as you think. All right. So what you'd have to show is that the official Westlaw actually plays a larger role in the law, in a lawmaking function, than does Westlaw. I doubt that there's something here that shows that, but maybe there is. I'll give you my best shot, okay? There are no cases in Georgia that have ever cited West's unofficial annotated code of Georgia. Because it's not official, and it's not something you would bring to court and say, well, look, an editor of Westlaw tells us that this is, ah, that this case is relevant or that this statute became effective on this date. There are lots of cases that cite the annotations to the OCGA as such in Georgia for lots of different kinds of propositions. Kagan. But I think one question that is, I think Justice Ginsburg asked it, is some of your examples, they're government documents with a point of view. And when you think about one of these annotation books, it doesn't look like it has a point of view. It looks like there are annotations of cases on both sides of an issue. And as long as we don't have any sense that the State is editing in order to create a point of view, you know, why doesn't that make a difference? So that's true of the judicial annotations because the judicial annotations are themselves summaries of the cases. I would say they have a point of view about the cases. They will tell you what they think is important about those cases. But they don't purport to comment, this was a well-decided case, the reasoning here is poor. I will say the State wants to focus on the judicial annotations because it's hard to imagine using them this way. You should really focus on the editor's notes, which are also an annotation over which they are asserting copyright in this case. I want to bracket, they claim copyright over everything. In this case, they decided not to assert against some of the works, including basically everything in the code. They claim it. But the editor's notes. The editor's notes are notes that appear in the OCGA that describe things like when this code provision becomes effective, whether it was the product of a veto override or how it was enacted. And it can be extremely important to deciding a case. So one of the cases that we point to where this, an editor's note was cited, is cited for the proposition that the State changed the rule for when a breathalyzer test was admissible. And it did so retroactively to all cases that were pending on, at the time that it was signed. The State cites, the Court cites the editor's note for that proposition, and that's the reason this person is acquitted. In that case. Roberts. Is there any other source for that proposition? Sure. You could go back to the statute at large, just like you could for all the non-positive law titles of the U.S. Code. So if there were an award given out by the Law Review Commission every year for the best treatise in a particular area, in other words, we think this is, you know, the best treatise. And as a result, it's cited more frequently and more authoritatively than other treatises. Does that change the copyright status? I don't think so, because I don't think that that treatise is still speaking with the authority of the State. You know, they can say this is a good treatise, in general you should look at it, but none of the propositions there have been adopted. And the treatise author certainly doesn't write with authority. Wright and Miller. But I mean the fact that the courts are going to cite that treatise and, you know, with some, probably more frequency than others. So the fact that you have this editor's note that tells you it's retroactive, that's not what makes it retroactive. The fact is there's something else that the editor is looking at, and that is the official source that makes it retroactive. The fact that they cite the particular notes for ease of reference or because that editor has developed a reputation as being particularly good seems to me doesn't transform the nature of those notes. Now, I will admit to you at the end of the day that the statute at large is going to control over the editor's note. The editor's note doesn't have the force of law as such. But that can't be the rule. It would be wildly under-inclusive to exclude all the things that aren't the best authority at the end of the day. Like I said, all the non-positive law titles of the U.S. Code are like that. They are only prima facie evidence of the law, and you have to point back to the statute at large if there's a dispute to say what the law is. But if that's the rule, like I said, the actual statutory text in the official codes of most of the states can now be copyrighted because that's what Code Revision Commissions do. They put out these non-positive law titles that are prima facie evidence of the law. They still have a legal effect. They just aren't the controlling authority. There's a lot of them. Go ahead. You gave us a two-part test. The first part is whether it's a legal work. What does that mean? It's just a work. A legal work is going to do one of two things. It's going to purport to State what the law is or interpret it, or it's going to be a part of the process of making it. And it's not intended to be, you know, a complicated doctrine. I think it's pretty easy to look at a work and determine whether it's a legal work or not. There's a lot of debate about what the precedents mean here. Should we interpret them in the direction of the text of the Copyright Act, which clearly says States can get copyright protection for annotations? I mean, States can get copyright protection for annotations only insofar as they meet the authorship requirement of the Act. The authorship requirement was given a gloss in Banks. Banks says it got that gloss in Wheaton under the Marshall Court, and Congress has not seen fit to change it. What about Howe? Do you accept Howe has correctly decided the Sixth Circuit decision by Justice Harlan? Yeah. We accept Howe has correctly decided, and we think it's a good case for us. Explain that. Okay. Because it doesn't seem that way to me. I'll give it my best shot. So it's really important to focus on the order of operations in Howe and how it's different from what happens here. So in Howe, Howe compiles, acting on his own, a compilation of the Michigan statutes together with his own annotations. After he does that, Michigan passes a statute authenticating just the statutory portion of his work. And it says you can treat that statutory portion as though it were published under the authority of the State. And that causes Justice Harlan to write an opinion that says even though Howell did that work on his own, you can cut and paste that text directly out of his book in order to republish a compilation of the laws because no one can own the laws. The other stuff, which Howell had produced first on his own and the State had never authenticated, remained Howell's property. The exact opposite happens with the OCGA. Lexis produces the annotation for and at the commission of a State commission. The State commission exercises supervisory authority over what those annotations say. The legislature then requires that those annotations be merged into the official State document. And then the whole document is published under the authority of the State of Georgia. If that's what had happened in Howell, I don't think you could copyright the annotations. The merger can't make the difference, though, right? No. I think the merger does make a difference because that is the legislature deciding that these annotations will be part of the code and then publishing that code under the State's authority. It could do the opposite. It could say we are only authenticating. If it had the authentication that's in the addendum saying the statutory text is authentic, you can treat it as good for site checking, that's fine. That's not making the whole volume official. The problem is publishing the whole volume under the authority of the State, including the annotations, and then saying, well, actually, these annotations aren't special, they're not distinguishable from what Westlaw does or anyone else. But if you cited the annotations as binding law, that would be wrong. Well, two things about that. One is I don't think that's right. If you cited the judicial annotation in court, you said I found this in the OCGA, and I haven't checked the case, but this is what the case says according to the OCGA. I'm not sure a court would treat that as incorrect. That seems to be a plausible way to use it. The court would do, correct me if I'm wrong, the court would do its own independent research to determine the weight to be afforded that authority. Right. But it does that with lots of things that we all agree are the law for purposes of this copyright rule. Just like when an agency tells you what one of its documents means, you're going to construe it, you're going to use your own judicial authority to attempt to determine what it means before accepting the agency's determination. But it still could be a good starting place. It wouldn't be the same if it was just something you read on the Internet. Can I ask you a question from a different direction, which is the States' amicus brief, which is a cross-section of States, makes a very strong argument that this is going to create problems in terms of incentives for creating these annotations in the first place. And so the net result of your position, if it wins, so the States' claim, is that there will be fewer of these annotations. Can you respond to that? Yeah. Happy to. If the proposition, which has to be Georgia's view, is that the annotations are just the same as private annotations, there is at least one, and usually two, privately annotated legal codes available for every State in the union. And that includes States that don't copyright anything, and it includes States that make an annotated code available on the Internet for free themselves. So the incentive to create these private works is not going to be affected at all by the decision of the States. So the States are just wrong about that? I mean, isn't there a cost-price issue that's involved? Or why are the States saying that if they have nothing to fear? I don't think the States have anything to fear. What they want is the official versions to exist. The official versions bear the States in perimeter. They get to supervise what goes in them. That's the source of the problem with the copywriting of it. But the unofficial and the annotations themselves will exist without regard to whether or not this kind of copywriting is going to exist. Well, I thought that Mr. Johnson told me that they would be more expensive. Do you dispute that? I do dispute that in two respects. One is the actual useful versions of these codes are already plenty expensive. There's a lot of discussion of the cost for printed volume, but online access, which is what really most practitioners need to use, most people want to use, it's much more expensive than the $400. But even accepting that the price is lower, I think that favors us. Because what's going on there is an exchange of you're going to accept a price cap in exchange for the right to publish this officially, not for publishing the annotations. Because Westlaw makes the annotations and is allowed to charge six times as much. Lexis isn't going to agree to do the annotation work in exchange for a price cap. What it wants for the price cap is the right to publish it officially. I hope that makes sense. There's a good description of this in a brief from some former publishing officials that explain, you know, if this is what's going on, Lexis is essentially being hoodwinked. Alito, what is your best evidence that the State actually edits what Lexis does or supervises the substance of what Lexis does? Well, so there's a couple of things in the publication manual that set forth how Lexis is supposed to communicate with the State, and it requires sending them memos with bracketing around what the new material is, Xeroxing the pages on which any ALR notes or opinions of the Attorney General might be deleted and pointing them out for State approval. The publication manual also highlights situations in which the State is likely to tell them what kind of editor's note to create surrounding complicated amendments or the like. So the Commission is involved, but we don't have, because the case was decided on summary judgment, we just don't have a record of how often the Commission actually edits. I just thought it possible. This has shed a lot of light in a number of areas. One of those areas is only applicable to some judges. Some judges do look at legislative history. So for those who do look at legislative history, a committee report has significance. All right? Now, take the same words and imagine that a senator long afterwards came into court and testified, that's what we meant. Would we give that senator weight? No. Or suppose that the committee met after it was passed. That's called post-enactment legislative history. Does that have some weight? Usually very little. And that's because that isn't normally their job. That isn't normally part of the lawmaking process. Thinking of that analogy, it seems to me that your case lies somewhere between the official post-enactment legislative history and over here the senator walking into the courtroom and just saying that's what I meant. Now, is that fair? Because I don't think you like my thinking that way. Oh, I'm comfortable with you thinking that way. And I think that that's one of the main points I've been trying to make here. There is a difference between being worth very little, but nonetheless being official, authentic State legal resource, and being worth nothing because you're not an authentic State legal resource. It's not even the senator walking in and testifying, right? What we need to compare this to is somebody from the New York Times walking in and testifying that this is what people had in mind when they enacted the statute. That's not good for anything because it's not a State legal resource. It doesn't speak in the voice of the State. And you can disagree about how much weight to give something that is nonetheless an authentic State legal resource. But that's the thing that makes the difference. And that, again, is the difference between these cases and Howell and Wheaton. Howell and Wheaton were allowed to add whatever they wanted. Presumably a certified copy of the committee report would not be post hoc. Whether – I think the point I was trying to make is post hoc or not might affect how much weight you want to give it. But the fact that it's a certified committee report is the thing that really makes the  SOTOMAYOR Now, I understand Justice Ginsburg's question because I do think there's – the comments troubled me, taking the government and petitioner's side. The editorial notes troubled me. But most of the references in the notes are just to judicial decisions and or general research matters. If it were limited just to that, is that – why can't the State? This is what – I'll just give you – yeah. I'll try to give you the best example we could find. In one of the State cases that cites a judicial annotation, what happened was a lawyer from Florida didn't file a response to a motion for summary judgment because he looked up the statute and the statute says there's going to be a hearing in 30 days. You can file something up until the hearing. It turns out that there's a rule that says, no, you have to file a response or else it might be deemed forfeited. And the Court is deciding whether his failure to file a response is excusable neglect. And the Court says, well, if you look at the annotations to this statute, it discloses the existence of Rule 6.3, which is not inconsistent with the statute. And this is what happens when you have a State legal manual, like the OCGA, that has official annotations in it. Courts will find ways, and regular people will find ways, to attribute importance to things that are difficult to use for judicial purposes, but sometimes will. And the reason they do that is because this is a legal work that speaks in the voice of the State and not just the bare work of someone who happens to be a legal editor at Westlaw or something like that. That would be a mistake, right? I mean, isn't that – it would be a mistake to attribute the significance to it. I don't know if it would be a mistake or not. Under State law, it would be a mistake. I mean, what they did was attribute significance to the fact that you could find it there in the manual when they were trying to figure out. But under State law, isn't that – that's wrong. Well, no. The State law would say that it would be wrong in construing the meaning of that statute, but it isn't necessarily wrong for figuring out what's excusable neglect, right? Whether it's good lawyering or bad lawyering, not to look at the annotations in the OCGA isn't governed by the statute. The statute doesn't say – Section 111 doesn't say anything about that. Well, but it would also be pertinent to the question of excusable neglect to look at what, you know, all the treatises said. I mean, if I'm writing an opinion about whether the lawyer should have known that, I would say all the treatises about Georgia law, you know, highlight the fact that you've got to file a response. I think you and I may have different instincts about that. I think it would be more appropriate for a judge to say, well, look, in the official State legal code, there are annotations that point to the rule that you neglected. I think that's more persuasive. That's different than saying, well, if you happen to look at the unofficial codification that Westlaw does, there's an indication that that rule exists. That's the difference. Roberts. Thank you, counsel. Three minutes, Mr. Johnson. I want to start briefly by talking about the different portions of the OCGA, things like editor's notes. We talk in our brief about why the editor's note should be copyrightable, why the Dominique case that my friend on the other side just was describing doesn't undermine our copyright claim. But I think the crucial point on this is that PRO copied the entirety of the OCGA, including the judicial decision summaries that I think are clearly copyrightable under Wheaton and Callahan. So PRO has to run the table on all portions of the OCGA to get an affirmance here, and I just don't think that they can. The PRO's main argument seems to be that the fact that the OCGA is official means that it cannot be copyrightable, and I just don't think that that's consistent with history or this Court's precedents. Again, going back to Wheaton and Callahan, you had official court reporters holding copyright in annotations. And given that those were government officials, I just don't think that it can make a difference here that the State is the one holding the copyright. I think that this case is the legislative analog of Wheaton and Callahan. But I think it's also important to look at the history of the Copyright Act. So the Copyright Office in the 1959 study and 1961 report interpreted the 19th century precedents we're talking about here as holding that States could hold copyright in annotations by State government employees. And then Congress passed the modern Copyright Act without in any way overriding that understanding or expanding the government edicts doctrine. Under that understanding, we win here. And then the final point that I want to touch on is how affirming the decision below would be very disruptive for States. So about a third of States have the same regime as Georgia. They claim copyright in annotations to an annotated official code by commercial publishers. So affirming the decision below would blow up those regimes. There are at least two additional States that claim copyright in annotations by State government employees, and five other States where the commercial publisher holds the copyright in the annotated official code. Those regimes would probably also fall if the Court's decision below was affirmed. So I think that statutory text and precedent compel a decision for Georgia here. Any innovations on the government edicts doctrine should come from Congress, not the courts. The court should reverse. Roberts. Thank you, counsel. The case is submitted.